**HOME PARAMOUNT PEST CONTROL, Appellant Below, Appellant,**

v.

**Germaine GIBBS, Appellee Below, Appellee.**

**No. 296, 2007.**

Supreme Court of Delaware.

Submitted: Oct. 24, 2007.

Decided: Jan. 17, 2008.

John J. Klusman, Esquire and Susan List Hauske, Esquire of Tybout Redfearn & Pell, Wilmington, DE, for Appellant.

Timothy E. Lengkeek, Esquire, of Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, for Appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

BERGER, Justice:

In this workers' compensation appeal, we consider whether an Industrial Accident Board (IAB) hearing officer should have granted a motion to vacate her decision because of similarities between the matter she decided and her own IAB claim. Both claimants sought compensation for carpal tunnel syndrome; both claimants were represented by the same law firm (but different attorneys); both employers were represented by the same law firm (but different attorneys); and both employers' medical experts were partners in the same medical practice. While we accept the hearing officer's assertion that she was not biased, we conclude that this combination of interrelationships mandates recusal in order to avoid the appearance of impropriety. Accordingly, we reverse.

### Factual and Procedural Background

In January 2006, Germaine Gibbs filed a Petition to Determine Compensation Due with the IAB. Gibbs claimed that he developed bilateral carpal tunnel syndrome from drilling holes in concrete while working as a termite technician at Home Paramount Pest Control. Gibbs's medical histories created serious factual disputes as to the cause of his carpal tunnel syndrome. The record established four possible sources of Gibbs's injury:

1) Idiopathic/Family Propensity. Gibbs's mother and brother both had surgery for carpal tunnel syndrome, and his father was diagnosed with it. Since the cause of carpal tunnel syndrome cannot be determined in more than half of all cases, one medical expert opined that Gibbs's family history would support the conclusion that his disorder was idiopathic.

2) Prior Work Injury. Gibbs worked for three years at Cott Beverage before his three months at Paramount. While working at Cott, he experienced tingling and numbness in his hands.

3) The Car Accident. In June 2005, Gibbs was driving a Paramount vehicle when he was in a car accident that injured his back and left him totally disabled. Gibbs told two of his doctors that he experienced numbness in his hands after the accident.

4) Work Injury at Paramount. Although he did not report it to his employer or doctor until several months after the June 2005 accident, Gibbs testified that he began experiencing numbness and tingling in his hands in April 2005, approximately one month after he started work.

The IAB hearing officer rejected the argument that these differing medical histories created any credibility issue. She found that Gibbs's drilling activity while working for Paramount was a substantial cause of the carpal tunnel syndrome, and awarded benefits.

After the IAB hearing officer issued her decision, Paramount learned that the hearing officer had filed her own claim for workers' compensation benefits based on carpal tunnel syndrome. In 2000, the hearing officer filed a petition to determine compensation, claiming that she developed carpal tunnel syndrome from typing her decisions. According to the hearing officer's testimony, the condition arose within one month after she started working at the IAB. The hearing officer was represented by an attorney from the same firm that represented Gibbs, and the IAB was represented by an attorney from the same firm that represented Paramount. In denying the hearing officer's claim, the Board accepted the opinion of the employer's medical expert, Dr. Kamali, and rejected the medical opinion proffered by the hearing officer's expert. Dr. Kamali is a partner of Dr. Ger, whose expert opinion was rejected in this case. Paramount filed a Motion to Vacate, detailing these relationships, but the hearing officer denied the motion. The Superior Court affirmed, and this appeal followed.

### Discussion

 Under settled Delaware law, a judicial officer must recuse herself if "there is any reasonable basis to question [her] impartiality."[1] In Los v. Los,[2] this Court explained the reason for this rule, and the two-part test used to determine whether recusal is mandated:

---

1. Beck v. Beck, 766 A.2d 482, 485 (Del.2001) (quoting Weber v. State, 547 A.2d 948, 952 (Del.1988)).

2. 595 A.2d 381, 383–85 (Del.1991) (Citations omitted.).

The requirement that judges be impartial is a fundamental principle of the administration of justice.... As a matter of due process, a litigant is entitled to neutrality on the part of the presiding judge but the standards governing disqualification also require the appearance of impartiality.

* * *

When faced with a claim of personal bias or prejudice under [Canon 3 C(1) of the Delaware Code of Judicial Conduct] the judge is required to engage in a two-part analysis. First, he must, as a matter of subjective belief, be satisfied that he can proceed to hear the cause free of bias or prejudice concerning that party. Second, even if the judge believes that he has no bias, situations may arise where, actual bias aside, there is the appearance of bias sufficient to cause doubt as to the judge's impartiality.

This Court reviews the subjective part of the *Los* test for abuse of discretion. We review *de novo* the objective determination of whether there is an appearance of bias.[3]

▮ The hearing officer satisfied herself that she was not biased, and we find no abuse of discretion in that ruling.[4] The second determination, however, requires an examination of the facts as they appear to an outsider. *Id.* The hearing officer found that it was "far fetched and unrealistic" to conclude that she was biased because: 1) her claim had been decided six years before Gibbs's claim; 2) she did not appeal the adverse decision in her claim; and 3) it was "ridiculous" to think that she would keep track of which attorneys and which physicians represented all the claimants that appear before her. The problem with this analysis is that it focuses on the hearing officer's subjective views rather than the controlling, objective standard.

We agree that a reasonable person would not expect a hearing officer to remember the lawyers and doctors in all cases. But most people would remember the principal participants in their own case, especially when confronted with a claimant alleging the exact same medical condition. The hearing officer hired an attorney from the same firm that represented Gibbs; her employer was represented by an attorney from the same firm that represented Paramount; and the two employers' medical experts are partners in the same practice. The hearing officer undoubtedly believed that her claim was meritorious, but she lost. Several years later, when Gibbs filed his claim, the same firms of lawyers and doctors were presenting almost exactly the same claim. As the decision-maker, instead of the claimant, the hearing officer was in a position to "right the wrong" that had been done in her case. Again, we do not question the hearing officer's subjective determination that she was impartial. But a person knowing this unusual overlap in both the claim and the participants would have a reasonable basis to question her impartiality. Accordingly, in order to promote public trust and confidence in our judicial system, the hearing officer should have recused herself. *Id.*

### Conclusion

Based on the foregoing, the judgment of the Superior Court affirming the decision of the Industrial Accident Board is reversed and this matter is remanded to the Superior Court for further action in accordance with this opinion.

---

3. *Stevenson v. State,* 782 A.2d 249, 255 (Del. 2001).

4. *See Watson v. State,* 934 A.2d 901, 905 (Del. 2007).