IN THE SUPREME COURT OF THE STATE OF DELAWARE

DIANDRE WILLIS,           §
                         §     No. 253, 2022
    Defendant Below, Appellant,   §
                         §
    v.                   §     Court Below:  Superior Court
                         §     of the State of Delaware
STATE OF DELAWARE,       §
                         §
    Appellee.            §     I.D. Nos.  2002013510(K)
                         §                2102002961(K)
                         §                2001011885(K)
                         §


Submitted:   May 3, 2023
Decided:     July 24, 2023


Before **SEITZ**, Chief Justice; **VALIHURA**, and **TRAYNOR**, Justices.

Upon appeal from the Superior Court.   **AFFIRMED**.

Santino Ceccotti, Esquire, Office of the Public Defender, Wilmington, Delaware for Appellant.

John Williams, Esquire, Department of Justice, Dover, Delaware for Appellee.


**VALIHURA**, Justice:

## I.     INTRODUCTION

Defendant below, Appellant Diandre Willis ("Willis"), appeals his conviction following an 18-count indictment.  He was indicted on two counts of Rape First Degree, two counts of Home Invasion Burglary First Degree, two counts of Kidnapping First Degree, two counts of Act of Intimidation, two counts of breach of Conditions or Bond During Commitment, two counts of Breach of Release, one count of Stalking, one count of Strangulation, one count of Harassment, one count of Terroristic Threatening, one count of Bribing a Witness, and one count Malicious Interference of Emergency Communications.[1]

A six-day jury trial began on March 14, 2022.  On March 21, 2022, the jury returned a verdict, finding Willis guilty as to 17 of the 18 charges after the State *nolle prossed* one count of Kidnapping First Degree.

Willis raises one issue on appeal.  He contends that his constitutional right to due process was violated when the trial judge failed to recuse himself from the trial where that judge previously had signed and approved a search warrant at an earlier stage of the investigation.  With respect to this sole issue on appeal, both sides agree that there are no facts in dispute.  We conclude that the Superior Court judge did not err in determining that his recusal was not required.  Therefore, we AFFIRM the judgment of the Superior Court.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. *The First Pre-Trial Conference*

By way of background, on March 7, 2022, the parties participated in a pre-trial

---

[1] *See* A48–54 (Indictment).

office conference with the trial judge (the "March 7 Conference").  The March 7 Confer-ence focused on an email the prosecutor had sent to the trial judge and Willis' counsel. The prosecutor reminded the judge that the judge "had signed a warrant back in 2020 in a case for Verizon."[2]  When asked what the State had sought in the warrant, the prosecutor informed the court and defense counsel that "the detective was trying to obtain call records and text message records."[3]  Ultimately, the warrant yielded only the times and dates of the calls and not the content of the calls.  The trial judge remarked that he had "no memory of the warrant" but that he was "not predisposed because I'll consider any arguments.  I just don't see a conflict that will impair my ability to be fair and impartial in the case based on viewing an affidavit at some point in time and potentially improving [*sic*] it."[4]

The trial judge then asked defense counsel for her reaction to the prosecutor's email. Defense counsel informed the court that she "got the message when Your Honor got the message" but that, as of the March 7 Conference, she was not sure whether the warrant at issue was related to Willis' case.[5]  Defense counsel admitted that she "believe[d] it was this case" but would "go back and look at the -- you know, get transcripts of those confer-ence, those office conferences, to see if it was, in fact, this case."[6]

---

[2] A57 (March 7, 2022, Office Conference Transcript at 3:4–5) [hereinafter Mar. 7 Trans. at _].

[3] *Id.* (Mar. 7 Trans. at 3:9–10).

[4] A57–58 (Mar. 7 Trans. at 3:16; 3:21–4:2).

[5] A58 (Mar. 7 Trans. at 4:6–7).

[6] *Id.* (Mar. 7 Trans. at 4:11–15).

Noting on the record that defense counsel had not yet made an application for recusal, the judge remarked that he was comfortable with not *sua sponte* disqualifying himself, and that he would accept an application by the parties and consider it if they thought it was warranted.[7] In response, Willis' counsel informed the judge that she would speak with Willis the following afternoon — March 8, 2022 — and raise the issue of the warrant and recusal with Willis then. She would then let the court know if she planned to file an application.

The trial judge then pressed the prosecutor on the warrant's scope. The prosecutor informed the court that when the warrant failed to yield the actual content of the messages, "the State went to the victim and got the now 35,000 text messages that we provided to defense counsel. So I would have to do a little bit more looking at the record, but I don't think the State intends on using any of the records from the search warrant[.]"[8]

In response, defense counsel remarked that she did not "think the consideration would be *what the result was of issuing the search warrant*, so much as it would have been *Your Honor became knowledgeable about the State's position* with regard to this case, and whether there would be potentially *any bias or prejudice to the Defendant*."[9] The trial judge then informed the parties that they would reconvene in a few days "unless I hear

---

[7] *See* A59 (Mar. 7 Trans. at 5:8–11).

[8] A60 (Mar. 7 Trans. at 6:9–13).

[9] A60–61 (Mar. 7 Trans. at 6:21–7:3) (emphases added).

4

some kind of an application. Again, if there is an application that either party wants to raise beforehand, then I certainly will consider it."[10]

## B. The Second Pre-Trial Conference

On March 10, 2022, the parties held another pre-trial office conference with the judge (the "March 10 Conference"). At the March 10 Conference, the parties discussed several pre-trial matters, including defense counsel's request for a continuance and the State's planned use of text message evidence. Neither side, however, raised the issue of a potential recusal.[11] Rather, it was the trial judge who, *sua sponte*, re-raised the topic of recusal.

Noting again that neither side had filed a formal motion for recusal, the trial judge remarked that he went back and reviewed the transcript wherein the prosecutor "essentially told me that I was disqualified, but the Court certainly made no ruling on that."[12] He then stated that he was "going to choose to do a *Los* analysis here [] just so that there's not any question."[13] Because the *Los* analysis is the fulcrum of Willis' appeal, we include the trial judge's analysis below.

Addressing the first prong of *Los*, which is a subjective analysis, the trial judge

---

[10] A62 (Mar. 7 Trans. at 8:11–14).

[11] In fact, the trial judge asked whether there were "[a]ny other issues, then, that you anticipate?" In response, defense counsel stated, "Not that I'm aware of." A75 (March 10, 2022, Office Conference Transcript at 12:21–23) [hereinafter Mar. 10 Trans. at _].

[12] A76 (Mar. 10 Trans. at 13:5–7).

[13] *Id.* (Mar. 10 Trans. at 13:9–11). The "*Los*" analysis referenced by the trial judge refers to this Court's decision in *Los v. Los*, 595 A.2d 381 (Del. 1991), wherein we outlined the two-step analysis required for a recusal motion.

5

found:

> First of all, based on having reviewed a warrant in the case back in 2020, I think, that subjectively, I have no bias, and that adds -- provides no bias in this case for me. I'm able to be an impartial judicial officer that presides over this case and is fair to both parties, so I have no subjective issue.[14]

Neither Willis nor the State challenges the court's analysis under the first prong of *Los*.[15] In fact, at oral argument before this Court, Willis conceded that there was no display of bias at all by the trial judge.[16]

Addressing the second prong of *Los*, which is an objective analysis, the trial judge remarked that "Objectively, there is also not an issue. And the Judicial Code of Conduct does not provide for this to be a reason for disqualification."[17] He continued:

> Judges are charged with understanding that, just for purposes of a warrant, the facts are assumed to be true, and there's a Four Corners Analysis. And there has been no motion to suppress in this case filed. There is no -- the State's represented that that evidence isn't even -- there wasn't even any evidence netted from that that's going to be used at trial. So I'm, quite simply, not conflicted out.[18]

The judge concluded the *Los* prong two analysis with the following:

> [A]t this stage, I'll certainly -- if there's some other fourth [*sic*] that any -- either party wants to raise, I'll certainly evaluate that, and we'll fairly and independently evaluate it, and if I get a formal motion to disqualify -- but

---

[14] A76 (Mar. 10 Trans. at 13:12–17).

[15] *See* Oral Argument, at 3:04–25, https://livestream.com/accounts/5969852/events/10842479/videos/236062926.

[16] *See* Oral Argument, at 6:21–48, https://livestream.com/accounts/5969852/events/10842479/videos/236062926. The facts here support this conclusion. For example, the trial judge stated, on the record, that he had "no memory of the warrant[.]" A57 (Mar. 7 Trans. at 3:16). Further, as the judge noted, "there wasn't even any evidence netted from [the warrant] that's going to be used at trial." A77 (Mar. 10 Trans. at 14:16–18).

[17] A76 (Mar. 10 Trans. at 13:18–20).

[18] A77 (Mar. 10 Trans. at 14:11–18).

6

based [on] the nature of how the issue was raised, I just wanted to put this on the record.[19]

The prosecutor then corrected, on the record, his previous statement regarding recusal and informed the court:

> [F]ollowing our last office conference and reviewing the transcripts provided by [defense counsel] where the State did say that Your Honor -- I believe, I said you were disqualified or conflicted out, to that nature, I did review a lot of similar case law prepaying [*sic*] for a motion, so the State would change its initial comments, and *the State agrees that this isn't an appropriate case for disqualification*.[20]

Following the prosecutor's clarification, the trial judge inquired on the record whether there was "[a]nything further" on this issue.[21]  There was no further discussion about a possible recusal, and the parties, instead, discussed the admission of certain pieces of evidence at trial.  Following final trial preparation discussions, the trial judge again asked: "Anything else?"[22]  To this, defense counsel responded: "No, Your Honor."[23]  Willis' trial began a few days later, on March 14, 2022, when a jury was empaneled, and the jury returned its verdict on March 21, 2022.

## C. The Contention on Appeal

Willis challenges his conviction on one ground, namely that:

> Willis was denied due process because the presiding judge did not recuse himself despite having approved and signed the warrant provided by the State

---

[19] A78 (Mar. 10 Trans. at 15:11–16).  Willis challenges this second part of the *Los* analysis.

[20] A78–79 (Mar. 10 Trans. at 15:22–16:6) (emphasis added).

[21] A79 (Mar. 10 Trans. at 16:9).

[22] A84 (Mar. 10 Trans. at 21:2).

[23] *Id.* (Mar. 10 Trans. at 21:3).  The prosecutor had the same response.  *See id.* (Mar. 10 Trans. at 21:4).

7

seeking inculpatory evidence against him. These circumstances at a minimum create the appearance of impropriety and deprived Willis of his right to a fair trial. Thus, the convictions at bar should be reversed.[24]

As noted above, this challenge involves the second part of the *Los* analysis.

### III.    STANDARD OF REVIEW

In reviewing a judge's decision regarding recusal, "[w]e review the subjective aspect of this decision for abuse of discretion and the objective portion *de novo*."[25]

---

[24] Opening Br. at 2.

[25] *Jones v. State*, 940 A.2d 1, 17 (Del. 2007) (citing *Stevenson v. State*, 782 A.2d 249, 255 n.2 (Del. 2001)). Both Willis and the State agree on the applicable standards of review:  abuse of discretion for the subjective prong of *Los* and *de novo* for the objective prong. *See* Opening Br. at 6; Answering Br. at 10 (both citing *Fritzinger v. State*, 10 A.3d 603, 611 (Del. 2010)).

We are aware, however, that certain case law from this Court indicates that the standard of review for recusal motions is abuse of discretion. *See, e.g.*, *Swan v. State*, 248 A.3d 839, 856 (Del. 2021) ("We review a trial judge's recusal decision for an abuse of discretion" and applying the abuse of discretion standard to both *Los* prongs) (citing *Butler v. State*, 95 A.3d 21, 31 (Del. 2014)); *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 247 A.3d 229, 242 (Del. 2021) ("When the trial judge performs those two inquiries, we review each under the deferential abuse of discretion standard."); *Watson v. State*, 934 A.2d 901, 905 (Del. 2007) ("We review a trial judge's decision not to recuse herself for abuse of discretion."); *Jackson v. State*, 684 A.2d 745, 753 (Del. 1996) ("The standard of review is abuse of discretion."); *Los*, 595 A.2d at 385 (stating that "[o]n appeal of the judge's recusal decision, the reviewing court must be satisfied that the trial judge engaged in the subjective test and will review the merits of the objective test" but that "[t]he standard for such review, however, is abuse of discretion").

To the extent there is a discrepancy concerning the standard of review for judicial recusal under the *Los* analysis, we clarify that this Court reviews the subjective prong for abuse of discretion and the objective prong *de novo*.  As we said in *Stevenson v. State*,

> To clarify any potential inconsistency arising from our decision in *Los,* we note that this Court will review a trial judge's decision under the subjective prong of the *Los* test for an abuse of discretion. A claim of appearance of impropriety, however, implicates a view of how others perceive the conduct of the trial judge, presenting this Court with a question of law to be reviewed *de novo* on appeal.

782 A.2d at 255 n.2. *See also Layton v. Layton*, 211 A.3d 136, 2019 WL 2078346, at *2 (Del. May 10, 2019) (ORDER) ("On appeal, this Court reviews the trial judge's analysis of the subjective test for abuse of discretion and reviews the merits of the objective test *de novo*."); *Turner v. State*, 162 A.3d 102, 2017 WL 1954944, at *1 (Del. May 10, 2017) (ORDER) (noting the

## IV. ANALYSIS

### A. *The Delaware Judicial Code*

We first explain the ethical framework pertaining to judicial conflicts. As we explained in *Meso*, "[t]his Court is the entity ultimately responsible for promulgating the rules and practices governing both bench and bar in Delaware. We promulgated the Delaware Judges' Code of Judicial Conduct (the 'Judicial Code') in fulfillment of that duty."[26]

"The Judicial Code provides that a 'judge should uphold the integrity, independence and impartiality of the judiciary' and, to that end, 'should avoid impropriety and the appearance of impropriety in all activities.'"[27] "According to the Judicial Code, 'impartiality' is the absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge."[28] The Judicial Code provides that "[t]he test for appearance of impropriety is whether the conduct would create in reasonable minds, with knowledge of all the relevant circumstances that a reasonable inquiry would disclose, a perception that the judge's ability

---

bifurcated standard of review for judicial recusal); *Gattis v. State*, 955 A.2d 1276, 1281, 1285 (Del. 2008) (same); *Home Paramount Pest Control v. Gibbs*, 953 A.2d 219, 222 (Del. 2008) (same).

[26] 247 A.3d at 239–40 (internal citations omitted). *See also* Del. Judges' Code of Judicial Conduct Preamble ("This Code shall constitute the 'Canons of Judicial Ethics' referenced in the Delaware Constitution, Article IV, Section 37.") [hereinafter Judicial Code at _].

[27] *Meso*, 247 A.3d at 240 (quoting Judicial Code at Canon 1 and R. 1.2(A)). *See also* Judicial Code at Canon 2 ("A judge should perform the duties of judicial office impartially, competently and diligently."); R. 2.3(B) ("A judge should avoid impropriety and the appearance of impropriety in all activities."); R. 2.5(A) ("A judge should perform the duties of the office impartially and diligently.").

[28] *Meso*, 247 A.3d at 240 (internal citation omitted).

to carry out judicial responsibilities with integrity, impartiality and competence is impaired."[29]

"Judicial Code Rule 2.11 governs disqualification. That Rule states that [a] judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to a set of enumerated examples."[30] Rule 2.11(A) lists those examples, which include situations:

> [W]here the judge is biased; has personal knowledge of disputed evidentiary facts concerning the proceeding; where the judge, the judge's relative to within the third degree or the judge's spouse or domestic partner has or is likely to have some involvement in the case at bar; where some member of the judge's household, directly or as a fiduciary, has an economic interest in the subject matter, or in a party, or any other interest that could be substantially affected by the outcome of the proceeding; or where the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it, or the judge was associated in the practice of law within the preceding year with a law firm or lawyer acting as counsel in the proceeding.[31]

"With certain enumerated exceptions listed in the rule, Rule 2.11(C) provides that as an alternative to disqualification, the judge 'may, instead of withdrawing from the proceeding, disclose on the record the basis of the judge's disqualification[.]'"[32] "'[I]f the parties and their lawyers, after such disclosure and an opportunity to confer outside of the

---

[29] Judicial Code at R. 1.2(A) cmt.

[30] *Meso*, 247 A.3d at 240 (internal quotation marks omitted). *See also Stevenson*, 782 A.2d at 255 (regarding the predecessor provision to Rule 2.11, this Court observed that "[t]he specific instances prompting disqualification that are set forth in the Code do not exhaust all situations in which a judge's impartiality may be reasonably questioned.").

[31] *Meso*, 247 A.3d at 240 (internal quotation marks and citation omitted).

[32] *Id.* at 241 (quoting Judicial Code at R. 2.11(C)).

presence of the judge, all agree in writing or on the record that the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceeding.'"[33]

"Disclosure and waiver pursuant to Rule 2.11(C) is available for all situations in which a judge is disqualified by the terms of Rule 2.11, *except* two from the enumerated list, namely, Rule 2.11(A)(1) and 2.11(A)(4)."[34] "Those are, respectively, conflicts due to actual personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding, and certain enumerated matters related to the judge's or the judge's previous law practice's current or prior involvement in the case."[35]

"The cases addressing judicial disqualification and recusal invariably involve an analysis of the unique facts and circumstances giving rise to the challenge."[36] *Los* is the leading Delaware case on judicial disqualification. There, we stated that "as a matter of due process, a litigant is entitled to neutrality on the part of the presiding judge but the standards governing disqualification also require the appearance of impartiality."[37] We noted that the judicial ethics rules we had promulgated codified both of these require-ments.[38]

---

[33] *Id.*

[34] *Id.* at 241 (emphasis in original).

[35] *Id.* at 241.

[36] *Id.*

[37] *Los*, 595 A.2d at 383.

[38] At the time of *Los*, the operative ethical rule was Canon 3(C)(1) of the 1987 predecessor to the current Judicial Code. *Id.* (citing *Weber v. State*, 547 A.2d 948, 951–52 (Del. 1988)). Canon 3(C)(1) corresponds to Rule 2.11(A)(1) of the current Judicial Code.

We determined that "[w]here the basis for the alleged disqualification is a claim, under Canon 3(C)(1) [the predecessor to Rule 2.11(A)], that the judge has a personal bias or prejudice concerning a party, no *per se* automatic disqualification is required."[39] Instead, we held that when "faced with a claim of personal bias or prejudice" under Canon 3(C)(1), the judge must engage in a two-part analysis to determine if recusal is warranted. First, the judge must determine whether she is subjectively satisfied that she can hear the case free of bias or prejudice concerning the party seeking recusal. "Second, even if the judge believes that he or she is free of bias or prejudice, the judge must objectively examine whether the circumstances require recusal because there is an appearance of bias sufficient to cause doubt as to the judge's impartiality."[40]

## B. Recusal was not Required

Because Willis does not challenge the first prong of the *Los* analysis,[41] we focus on the second prong. As we have explained, "the second step requires the judge to examine objectively whether the circumstances require recusal because there is an appearance of bias sufficient to cause doubt as to the judge's impartiality."[42]

---

[39] *Los*, 595 A.2d at 384 (internal quotation marks omitted).

[40] *Stevenson*, 782 A.2d at 255 (internal quotation marks and citation omitted). *See also Layton*, 2019 WL 2078346, at *2 ("the judge must determine whether there is the appearance of bias sufficient to cause objective doubt as to the judge's impartiality"); *Turner*, 2017 WL 1954944, at *1 ("even if the judge subjectively believes she does not have bias, she must determine that there is not an 'appearance of bias sufficient to cause doubt as to the judge's impartiality.'") (quoting *Los*, 595 A.2d at 385). As the United States Supreme Court stated in *In re Murchison*, "to perform its high function in the best way, 'justice must satisfy the appearance of justice.'" 349 U.S. 133, 136 (1955) (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)).

[41] *See supra* note 15.

[42] *Jones*, 940 A.2d at 18 (internal quotation marks and citation omitted).

Willis argues that the trial judge's "advance information couldn't help but provide some bias in presiding over the trial or at the very least the appearance of bias. Any objective observer of this situation would have at least have [*sic*] cause to question the impartiality of the Judge."[43] The State responds that "[a]n objective review of [Willis'] circumstances fails to demonstrate an appearance of impropriety."[44]

Under the second prong of *Los*, "we must assess whether an objective observer would view all the circumstances and conclude that a fair or impartial hearing was unlikely."[45] This Court has held that recusal is needed when "there is an appearance of bias sufficient to cause doubt about judicial impartiality."[46] We have said that "[t]he appearance of impropriety is conceptually distinct from the subjective approach of a judge facing a possible disqualification challenge and does not depend on the judge's belief that he or she is acting properly."[47] The second determination requires "an examination of the facts as they appear to an outsider."[48] "Any inquiry into the question of whether a judge's impartiality might reasonably be questioned is case specific."[49]

We agree with the trial court that, on an objective basis, recusal was not required. This Court has said that "[t]o serve as a disqualifying factor, the alleged bias or prejudice

---

[43] Opening Br. at 9.

[44] Answering Br. at 21.

[45] *Fritzinger*, 10 A.3d at 613 (citing *Gattis*, 955 A.2d at 1285).

[46] *Fritzinger*, 10 A.3d at 613 (citing *Los*, 595 A.2d at 385).

[47] *Stevenson*, 782 A.2d at 256.

[48] *Home Paramount Pest Control*, 953 A.2d at 222.

[49] *Stevenson*, 782 A.2d at 258.

of the judge 'must stem from an extrajudicial source and result in an opinion on the merits on some basis *other than what the judge learned from his participation in the case*.'"[50] In *Gattis*, we noted that the United States Supreme Court in *Liteky* explained that "because 'neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be better to speak of the existence of a significant (and often determinative) 'extrajudicial source' *factor*, than of an 'extrajudicial source' *doctrine*, in recusal jurisprudence.'"[51] Accordingly, in *Gattis*, we framed the inquiry as to whether the challenged circumstances "would lead an objective

---

[50] *Jackson*, 684 A.2d at 753 (emphasis added) (quoting *Los*, 595 A.2d at 384). The United States Supreme Court has held that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion *unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible*." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (emphasis added). *See also Layton*, 2019 WL 2078346, at *3 (stating that "for the judge to be disqualified under the objective portion of the *Los* test, 'the alleged bias or prejudice of the judge must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from [her] participation in the case'") (quoting *Gattis*, 955 A.2d at 1282).

We have routinely found that recusal was not warranted when a judge learned information exclusively from her role as a judicial officer:

> The trial judge's familiarity with [a witness] was entirely attributable to [the witness'] appearance as a witness during a suppression hearing in a criminal case. Thus, any knowledge of [the witness] or contact with [the witness] by the Superior Court was *exclusively from a judicial source and in a judicial context*.

*Stevenson v. State*, 709 A.2d 619, 635 (Del. 1998) (emphasis added). The same reasoning applies here. The trial judge approved the warrant in his capacity as a judicial officer. Thus, any potential indication of bias or prejudice stems from a *judicial* source — not an *extrajudicial* source. *See, e.g.*, *In re C.M.*, 103 A.3d 1192, 1202 (N.H. 2014) (holding that recusal was not warranted and observing that "it is widely accepted that a judge who issues a search warrant is not precluded from presiding over a suppression hearing at which the warrant's validity is determined" and that "[t]his is merely a manifestation of the broader principle that '[a]dverse rulings against the defendant in the same or a prior judicial proceeding do not render the judge biased.'") (quoting *State v. Bader*, 808 A.2d 12, 21 (N.H. 2002)).

[51] 955 A.2d at 1283 (emphases in original) (quoting *Liteky*, 510 U.S. at 554–55).

14

observer to conclude that a fair and impartial hearing is unlikely."[52] Willis contends that an objective, reasonable observer would conclude that there is an appearance of impartiality as a result of the *ex parte* nature of the process by which a warrant is issued.

Although the issuance of a warrant is *ex parte*, in issuing search warrants, judges must be neutral and detached and do not evaluate the credibility of witnesses but, instead, determine only whether the affidavit establishes probable cause for the issuance of the warrant. The ability to cross-examine witnesses in later proceedings, *e.g.*, a suppression hearing, allows for an opportunity to test the evidence.[53] As we observed in *Valentine v. State*, "[i]t is well settled that any finding of probable cause must be based on the information that appears within the four corners of the application or affidavit."[54] We stated further

---

[52] *Id.* at 1285–86. *See also Swan*, 248 A.3d at 885 ("The main focus of the second prong is whether an objective observer, examining all of the circumstances, would conclude that a fair or impartial hearing is unlikely.").

[53] *See, e.g.*, *Vandegrift v. State*, 573 A.2d 56, 62 (Md. Ct. Spec. App. 1990). There, the Court of Special Appeals of Maryland found no merit to the contention that the trial judge, having issued an order authorizing electronic surveillance, was no longer a neutral and detached magistrate. It discussed a prior case where the court held that a warrant-issuing judge was not disqualified from presiding over a later suppression hearing involving the validity of that warrant absent a showing of bias or prejudice on the part of the judge. Finding little distinction between the prior case and the case at hand, the court observed that "'[t]he action in issuing the warrant [or order] is ex parte and merely appraises the prima facie showing of probable cause[,]'" whereas "'[t]he motion proceeding is adversarial, and the judge adjudicates all questions of law and fact posed on the challenge of the validity of the warrant [or order].'" *Id.* (quoting *Trussell v. State*, 506 A.2d 255, 257 (Md. Ct. Spec. App. 1986)).

[54] 207 A.3d 566, 570 (Del. 2019) (citing *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013) (noting that the Fourth Amendment's probable cause requirement for warrants "must be premised on the information within the four-corners of the affidavit") and *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000) (referring to the four corners test as a "time honored standard")). *See also Gordon v. State*, 245 A.3d 499, 514 (Del. 2021) (observing that the four corners rule "is faithful to the statutory requirements that search-warrant applications be made in writing and under oath and be granted only if the facts recited in the application support a probable-cause finding").

that "[b]y requiring that the facts relied upon by the issuing magistrate be recorded in the affidavit, the ability of a reviewing court to assess whether the probable cause requirement has been satisfied without the need to resort to extrinsic testimony is preserved."[55]

Here, the record before us does not suggest that anything other than a "four corners" analysis occurred in issuing the warrant. There is no suggestion in the record that judicial neutrality was compromised or that the trial judge somehow acted as an "adjunct law enforcement officer" or otherwise participated in the police investigation.[56] The trial judge had no recollection that he signed the search warrant, an event that occurred 16 months prior to Willis' trial, and there was no formal recusal motion made during trial by the defense.[57]

Faced with a record that reveals no prejudice or bias on the part of the trial judge, Willis advocates that this Court impose a bright-line rule that a judge who signs a warrant is precluded from presiding over the trial.[58] However, we decline to adopt such a rule.[59]

---

[55] *Valentine*, 207 A.3d at 570–71.

[56] *See Ferguson v. State*, 853 A.2d 784, 794–95 (Md. Ct. Spec. App. 2004) (observing that "[a] magistrate loses his or her neutral status by acting as an adjunct law enforcement officer, participating in the investigation or having a stake in its outcome"); *Vandegrift*, 573 A.2d at 61–62 (rejecting contention that the judge, having earlier issued an order authorizing electronic surveillance, was no longer a neutral and detached magistrate as there was no indication in the record that the judge "was a player in this investigation, nor is there any indication that he had a stake in its outcome").

[57] Although we observe that no motion to suppress evidence was filed by Willis, as the search warrant did not turn up any evidence admitted at Willis' trial, we agree with the parties that the "fruits" of the warrant do not bear on the analysis of whether an objectively reasonable person would conclude that there is an appearance of impartiality in this circumstance.

[58] *See* Oral Argument, at 10:40–11:08, https://livestream.com/accounts/5969852/events/10842479/videos/236062926.

[59] We note that several of our sister State Supreme Courts have also declined to adopt such a bright-line rule. *See, e.g., In re C.M.*, 103 A.3d at 1202 (stating that "it is widely accepted that a judge

Although a "best practices" approach suggests to us that the judicial officer ruling on the issuance of a warrant preferably would not be the same judicial officer presiding over the trial, we are also confident that judges are quite capable of recognizing the different issues and standards of proof involved, much like a judge does when she deems certain evidence inadmissible or rules on a motion to dismiss where all the facts are presumed to be true.[60]

who issues a search warrant is not precluded from presiding over a suppression hearing at which the warrant's validity is determined"); *Minks v. Com*, 427 S.W.3d 802, 807 (Ky. 2014) ("[W]e decline to adopt a rule that any judge must automatically recuse from hearing a challenge to a search warrant which he or she issued."); *Heidt v. State*, 736 S.E.2d 384, 390 (Ga. 2013) (finding that "the involvement of the trial judge with the issuance of search warrants" did not require recusal); *State v. Chamberlin*, 162 P.3d 389, 394 (Wash. 2007) (holding that "no inherent prejudice or bias arises from" a judge signing a search warrant and later ruling on a suppression motion, and thus, "there is no basis for an automatic recusal rule"); *Hirning v. Dooley*, 679 N.W.2d 771, 781– 82 (S.D. 2004) (noting that the trial judge who signed a warrant is not *per se* required to be recused); *People v. McCann*, 85 N.Y.2d 951, 953 (1995) ("We additionally reject defendant's argument that a rule prohibiting Judges from entertaining motions to suppress evidence seized pursuant to the warrants they have issued is necessary to protect the integrity of trials."); *David v. State*, 748 S.W.2d 117, 119 (Ark. 1988) (holding that Canon 3(C)(1)(a) "does not necessarily require a judge [who signed a warrant] to recuse"); *Hawkins v. State*, 586 S.W.2d 465, 466 (Tenn. 1979) (holding that "a trial judge who initially issues a search warrant is not thereafter so interested in the cause as to be disqualified" from the case); *Waupoose v. State*, 174 N.W.2d 503, 504 (Wis. 1970) (holding that the same judge can issue a warrant and then oversee the criminal proceeding). *Compare United States v. Alton*, 982 F.2d 285, 287 (8th Cir. 1992) (rejecting an objection to a judge ruling on a motion to suppress where that same judge had previously issued the challenged warrant, observing that the defendant had not raised the issue below, and, in rejecting the argument "without giving it the normal scope of appellate review[,] stating that there was "no indication of actual bias[,]" but cautioning that the court had "some doubts about the practice," and its affirmance "is not to be interpreted as approving it").

[60] This Court has previously rejected claims that a judge's involvement in a case mandates recusal. This most often arises with evidentiary rulings, where we have rejected the notion that a judge ruling on the admissibility of contested evidence means she cannot preside over the case:

> It is part of a trial judge's normal role to rule upon the admissibility of contested evidence. In the event a judge declares certain evidence to be inadmissable [*sic*], the judge is expected to exclude that evidence as a factor in any further decision making process. *To require a judge to disqualify himself or herself from further participation in a case where the judge acts as a gatekeeper for the admissibility of evidence would impose an unreasonable and totally impracticable standard*. A conscientious application of the subjective test by a judge faced with a recusal

## V.    CONCLUSION

For the reasons set forth above, we AFFIRM the Superior Court's judgment.

---

motion based on exposure to inadmissible evidence in the same proceeding will, in most cases, provide sufficient protection from bias.

*Jackson*, 684 A.2d at 753 (emphasis added).  Although we recognize that Willis focuses on the *ex parte* aspect of the warrant's issuance, the same reasoning in *Jackson* strikes us as persuasive in the warrant context.  The *per se* bright-line recusal rule advanced by Willis is not required and does not comport with the case-specific nature of such inquires.

18